SNEED, J.,
delivered the opinion of the court.
The bill in this case was filed for a construction of the last will and testament of the late John H. Bills. The difficulty is as to the effect of certain phrases the testator has employed in the fourth and twelfth clauses of the will; and the question presented is, whether, in the disposition of his estate to his married daughters, he intended to cut off the marital rights of their husbands in the residue of his estate, after certain special devises to said daughters.
It is very clear, and is conceded, that, by four substantive clauses of the will, by which certain property is given to his four married daughters, the testator has created in each of them a separate and independent estate, to which the marital right cannot attach. A doubt is intimated in the bill whether certain phrases used, do not import a like restriction as to the property devised in the residuary clause.
It is a doctrine of the law long recognized in this State, that in the gift of property to a feme covert, if it be the intention of the donor to interfere with the •marital right of the husband, that intention must be expressed in the clearest and most unequivocal terms; and if a doubt exist as to such intention, it must be resolved in favor of the marital right. This right is a favorite of the law, and the courts will protect it in all doubtful cases with the same readiness with which they will foster the independent estate of' the wife, when the intention to create that is clear.
This right, as this court has said, founded in wis *223 dom and policy, and exercising a most happy influence upon the social relations, is a fixed and stable right of the common law, and unless the intention to displace it be manifest, it should be allowed to have its full effect. And the court quotes approvingly, the words of Lord Brougham, in Tyler v. Lake, 2 Ryan & Moody, 189, “that the expressions used to cut off the marital right must be such as to leave no doubt of the intention, and' to forbid the court to speculate on what the probable object of the donor may have been.” And in that connection, the words of a standard authority are also quoted, to the effect that in modern times the judges have required much more stringent expressions for this purpose than were once considered sufficient. Eaves v. Gillespie, 1 Swan, 131; Hill on Trustees, 421.
his cardinal doctrine pervades all the books, and is expressed with like emphasis, though in varied diction, in all of them. Irwin v. Chrisman, 2 Col., 501; Beaufort v. Collier, 6 Hum., 487; Thompson v. MeKissick, 3 Hum., 631.
It is said that the principle is now thoroughly established, that courts of equity will not deprive the husband of his rights at law, unless there be a clear intention of the donor so to do, manifested by language excluding the marital right in express terms. 1 Williams on Executors, 632. Such a claim, says Clancy, on the part of a married woman, being against common right, the instrument under which it is made must clearly speak the donor’s intention to bar the husband, else it cannot be allowed. It' will appear, *224 says this author, from the cases, that. the strongest evidence of intended generosity and of bounty toward the wife, will not be sufficient to give her a separate estate, unless, in addition, language be used by the donor clearly expressing the exclusion of the husband; or else directions be given with respect to the enjoyment of the gift, wholly incompatible with any dominion of the husband. Clancy’s Husband and Wife, 262.
The right is yet more strongly guarded in -another authority, where it is said that the language of the trust is usually interpreted to sustain the marital rights-of the husband, if it can by any reasonable construction be made to effect that object. Tyler on Infancy and Coverture, 302.
It is a safe law in the construction of wills, that all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the last must prevail. 2 Jarm. on Wills, 720. .
There is another rule, that where a testator uses technical words, he is presumed to employ them in their legal sense, unless the context clearly indicate the contrary. lb.
And another, still, of no less importance in its application to the question now in judgment, is, that several independent devises not grammatically connected, nor united by the expression of a common purpose, must be construed separately, and without relation to each other; although it may be conjectured, from sim *225 ilarity of relationship, or other such circumstance, that the testator had the same intention in regard to all. There must be an apparent design to connect them. lb.
We have cited these familiar rules of law, because they embody the principles which must determine this controversy.
It will be apparent to any reader of this will, that it was drawn by a skillful hand; that its phraseology exhibits uncommon clearness and caution, as well as a jealous and discriminating equity in the disposition of a large estate among the objects of the testator’s affection and bounty. And these facts gather significance and importance in view of the circumstance that it is upon the use of two little words in the fourth clause of the.rvill, that the doubt is raised which has led to this litigation.
It seems to have been the prevailing idea and intention of the testator, to apportion his estate equitably among his wife and children, and in regard to the latter, to apportion it in reference to advancements already made to some, so that the shares of all should approximate equality.
The first clause provides for the payment at once of all the debts due from the estate.-
The second clause refers to certain specific devises thereinafter to be made, in the words following:— “No account of advancements to either of my children is to be taken in the special devises here to be made. I intend making them equal, so that the remainder may be shared alike by them.”
*226 The third clause makes provision for the testator’s wife, in lieu of dower.
The fourth clause, out of which the doubt has arisen as to the marital right, is in the words following :—
“The residue of my estate, real and personal, •and the remainder ip the realty bequeathed to my wife, I give to my six children or their heirs, in the manner following, to-wit: the portions specially devised to my four daughters or their heirs, viz: Ophelia J. Polk, Evelina M. Polk, Clara Alison, and Lucy Ar-mistead, to be for their sole and separate use during their respective lives, not subject to the control of any present or future husband of either of them, nor subject to be taken for the debt or contract of either of them, it being my purpose and will that my daughters enjoy the respective portions herein devised to them as they see fit, to-wit: the interest and rents accruing therefrom, and the remainder, to go to their children, and, in the absence of children, to their next of kin. The bonds herein devised, my executor may, at his discretion, renew or. re-invest in similar stocks (bonds) with longer time to run, it being my wish to provide income for the comfortable support of my said daughters, without wasting the principal. If, however, it shall be apparent to my executor that the income is not sufficient to meet their reasonable wants, he may, in his judgment, sell any portion of the stocks (bonds), and pay the proceeds over to them, or either of them. The portion herein devised to the children of my lamented daughter, Mary C. Wood, may be handed over *227 ■to them at the discretion of my executor, with or without restriction.”
Then follow clauses five, six, seven, and eight, in which special devises of lands and stocks are made to his four married daughters respectively. And following these are clauses nine, ten, and eleven. In the ninth, he specially devises certain described properties ■to the children of his deceased daughter, Mary C. Wood; in the tenth, a special devise of real estate and stocks to his son Leonidas, and in the eleventh, a devise of a store house and lot in the town oí Bolivar to Mr. Armistead, the husband of his youngest daughter. The twelfth clause follows, which is in the words following : — “ Having in the foregoing made my children equal in my bequests, regarding advancements heretofore made, it is my will that the balance of my estate be sold by my executor, and equally divided among my children.” After these words, he proceeds in the same clause to direct that the children of his deceased daughter shall represent their mother for one share, with a reservation of certain realty given to his wife during her life, and with directions to his executor to divide the real estate not so reserved among his children, if he finds it practicable.
• The question is, whether the testator did not intend by the words “herein devised,” as used in the fourth clause of the will, to apply the restrictions upon the marital rights of the several husbands as well to the residuum disposed of in the twelfth clause as to the ' special devises referred to in the fourth clause. If this were a matter of doubt, or if its ambiguity *228 made it necessary that we should speculate as to the-import of these words, we should feel bound, under the principles already cited, to resolve the doubt in favor of the marital right. But in view of the whole instrument, and especially in reference to the collocation and grammatical construction o,f the debatable-words, we have no doubt of the testator’s intention to cut off the marital rights only as to the property “specially devised” to his married daughters, and that the words, “herein devised” as used in said clause, do-not refer to the residuum, but only to the special devises referred to in said clause. And even if the words, “ It being my purpose and will that my daughters enjoy th'e respective portions herein devised as-they see fit,” were clearly applicable to the residuum, yet we would be far from admitting, under our decisions, that such words, without more, would cut off the marital right.
It is a rule of law, that where technical words are used in a will, it is presumed that they were used in their legal and technical sense. The testator, in this ease, evidently knew what he was about; and he-well knew the sense and legal effect of the words, “specially devised,” as used in said clause. For, in the very nest clause, the special devises begin; and they are, in form and effect, special devises in the most technical sense. He then, in this fourth clause,, only anticipated . these special devises, and in very clear and unequivocal terms stamped them with the characteristics of a separate estate. And to make his intentions still more certain, he further defined the *229 -manner in which the property so set apart, or herein devised to his daughters as their separate estates, should ■be enjoyed by them; while in the residuary clause he made a sweeping disposition of all the balance of his estate, without the slightest restriction as to the marital right.
It is stated in the bill, that the residuum thus disposed of amounts to about two-fifths of the whole estate; and it is not to be doubted that if this intelligent testator intended to deprive his sons-in-law of their common law right as to this part of his property, he would have clearly manifested that purpose in the residuary clause, and not have left so important a matter to the chances of grammatical construction, ■or to judicial interpretation of certain obscure phrases, 'having no apparent connection with the said residuary ■clause.
It will be observed that the words “herein devised,” are used three times in the fourth clause, and twice in reference to bonds “herein devised” to his children, and that bonds are bequeathed only in the clauses which are referred to as the special devises. This, ■of itself, would seem to afford a key to the intention ■of the testator, and to show that the words were used only in reference to the special devise. And, in connection .with this, we must give the proper significance to the fact that the residuary clause starts out as a substantive and independent provision, assuming in its very terms that all special dispositions and limitations for the protection of his daughters against the contingencies of the future had already been made, subor *230 dinating every other consideration to that of equality- and justice in the distribution of his estate. Its words, and the manner of its introduction, are important to be observed. It follows after the special devises, which have carved out separate estates for his daughters, and which have unequivocally cut off marital' rights, and is in the words following: — “Having, in the foregoing, made my children equal in my bequests, regarding advancements heretofore made, it is my will' that the balance of my estate be sold by my executor,, and equally divided between my children/’ — without a word that would import an intention to create a separate estate as to the residuum, which the fourth clause had already created as to the special devises.
It is a maxim of the law, in the construction of wills, as of other instruments, that the expression of one thing is the exclusion of another. Also, that “that which is expressed puts an end to that which is implied.” Expressio unius est exolusio alterius. Ex-pressum facit oessare taoitum.
The testator having clearly expressed the intention that marital rights should not attach to the property specially devised, we cannot, by mere implication,, evoke such a purpose as to the residuum.
It results, therefore, in our judgment, that the marital rights attach to all the property devised and; bequeathed to the testator’s married daughters, except such as is embraced in the special devises contained in the fifth, sixth, seventh, and eighth clauses of the will. Reverse the decree, and remand the ease.